UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JUAN P. VERRETTE                               CIVIL ACTION NO. 07-cv-0547

VERSUS                                              JUDGE WALTER

KIATONIA J. MAJOR, ET AL                  MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Juan Verrette ("Plaintiff") alleges that he suffered a fractured skull when he was attacked by a fellow inmate at David Wade Correctional Center ("DWCC"). He filed a pro se complaint and amendments thereto (Docs. 1, 22, 25 and 26) against several prison officials. He alleges that they violated his constitutional rights and the Americans with Disabilities Act ("ADA"). Nine of the several defendants have joined in a Motion to Dismiss (Doc. 54) based on Rule 12(b)(6) and qualified immunity. Plaintiff, now represented by counsel appointed by Judge Walter, opposes the motion and stands on the validity of the claims asserted in the pro se complaint, as amended.

**Rule 12(b)(6) Standard**

A defendant may challenge a complaint by filing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). In assessing the motion, the court must accept as true all well-pleaded facts in the complaint and view those facts in the light most favorable to the plaintiff. In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007).

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief-including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007), quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007).

**Qualified Immunity**

An individual defendant is entitled to qualified immunity from claims for money damages unless the facts alleged, taken in a light most favorable to the Plaintiff, show that the defendant's conduct violated a constitutional right that was clearly established at the time of the violation. See Saucier v. Katz, 121 S.Ct. 2151 (2001). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002)(en banc). In a Rule 12(b)(6) contest, that means the Plaintiff must point to portions of his complaint "that state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity." Babb v. Dorman, 33 F.3d 472, 477 (5th Cir. 1994).

**Mike McDaniel and Sgt. Pietsche**

Plaintiff alleges that on March 6, 2006, he was a worker on a manual-labor crew at DWCC. His job assignment for approximately two months had been using a "hacksaw" to cut branches off of trees. The crew, consisting of approximately 60 inmates, was headed by

two corrections officers referred to as line pushers. Defendants Mike McDaniel and Sgt. Pietsche were the line pushers in charge of Plaintiff's crew. They were aided by six "gun guards."

Plaintiff alleges that when the crew arrived at the work site one of the officers gave orders for the "headliner" inmates - those who distribute tools to the other inmates - to fall out of line. One of the headliners was absent, and inmate Cody Charles substituted himself in that role without being advised to do so by either McDaniel or Pietsche.

Sgt. McDaniel called for the inmates to retrieve their working tools. Plaintiff approached inmate Charles, who had grabbed all 10 hacksaws. Charles had released two of the saws to other inmates, but he refused to give Plaintiff a saw and told Plaintiff that he had already promised the saws to his friends. A mild argument ensued, and Plaintiff finally took one saw from Charles and lined up with other inmates who had their tools.

About 10 minutes later, inmate Charles approached Plaintiff and attempted to revisit the dispute. Plaintiff dismissed the effort and thought Charles had left the area. About one minute later, however, Charles used a hoe to strike Plaintiff on the right trapezoid muscle. Charles then hit Plaintiff again at the rear of the neck, causing Plaintiff to stagger and all other inmates to scatter. Charles struck Plaintiff a third time, this time to the head. The blow fractured Plaintiff's skull and resulted in surgery.

Plaintiff alleges that Sgts. McDaniel and Pietsche did nothing during the attack. Plaintiff attaches as an exhibit to his complaint a disciplinary report in which Sgt. McDaniel

described the attack. McDaniel wrote that Plaintiff was struck from behind in the back of the head and "several more times in the back" by inmate Charles. McDaniel then wrote: "At this time Sgt. Pietsche and myself gave inmate Cody several direct verbal orders to put down his tool, inmate Cody complied." Plaintiff faults McDaniel and Pietsche for not ordering the six gun guards, who were armed with rifles, to fire a warning shot. Plaintiff suggests that a warning shot would have been in keeping with prison policy.

Plaintiff asserts that Sgts. McDaniel and Pietsche are liable to him for failing to protect him from the assault. The two sergeants argue that Plaintiff has not alleged facts to overcome their qualified immunity defense. In a typical claim of this sort, the inmate alleges that a prison official knew of facts before an attack that should have led the official to take preventive measures. In such a case, the inmate must show that he faced a substantial risk of serious harm and that the prison official was deliberately indifferent to his need for protection. Farmer v. Brennan, 114 S.Ct. 1970, 1977 (1994). In order to act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 1979. See also Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995).

Plaintiff does not allege that Sgt. McDaniel or Sgt. Pietsche was aware of facts *before* the attack from which either could have drawn an inference that Plaintiff faced a substantial risk of serious harm. Rather, Plaintiff alleges that McDaniel and Pietsche violated the Constitution when they did not take more immediate steps to stop the attack after it

commenced. The Fifth Circuit has addressed similar claims in the summary judgment setting. In Rios v. Scott, 100 Fed. Appx. 270 (5th Cir. 2004), Officer Sippel was escorting a prisoner to his cell when another prisoner suddenly broke out of his cell and stabbed the escorted prisoner with a weapon. Sippel, armed only with a baton, did not intervene but ran to get help. The attacked inmate died as a result of the stab wounds. The Fifth Circuit affirmed a summary judgment that held Sippel was entitled to qualified immunity "because there is no clearly established constitutional right for an officer to immediately intervene when an armed inmate attacks another inmate, as the officer may need to call for backup or seek to avoid her own serious injury." Rios, 100 Fed. Appx. at 272.

A similar claim was presented in Longoria v. Texas, 473 F.3d 586 (5th Cir. 2006) when an inmate was attacked and stabbed by two other inmates. Three unarmed officers were in the pod at the time of the attack. The officer who was escorting the attacked prisoner attempted to stand between the inmate and the attackers, but the officer was pushed aside. The two other officers, who were inspecting a cell in the pod, heard the commotion and approached, but they were threatened by one of the attackers, and they ran away to alert other officers and obtain weapons and tear gas. The district court denied a motion for summary judgment based on qualified immunity, but the Fifth Circuit reversed with the observation, "No rule of constitutional law requires unarmed officials to endanger their own safety in order to protect a prison inmate threatened with physical violence." Longoria, 473 F.3d at 593-94.

This case is presented on a motion to dismiss, rather than a motion for summary judgment, so the court does not have the benefit of affidavits or other evidence that would flesh out the facts surrounding the incident. It is incumbent upon Plaintiff, faced with a qualified immunity defense, to plead such facts in this setting, and he has had ample opportunity to plead his best case. Each case stands on its own facts, and the facts alleged in this case are not identical to those in Rios or Longoria, but the legal principles of those cases do apply and require dismissal of the claims against McDaniel and Pietsche.

Plaintiff does not allege that either McDaniel or Pietsche had any warning whatsoever before Plaintiff was struck the first time. The amount of time between the first and third blows is not alleged, but the only reasonable inference from the alleged facts is that the blows were applied in quick succession. With those facts in mind, the decision must be made whether McDaniel or Pietsche's response to the attack was deliberate indifference and that any reasonable officer would have realized that the response ran afoul of clearly established constitutional law.

Plaintiff argues in his memorandum that Rios and Longoria are distinguished because those cases addressed unarmed officers, when there were six armed officers present at the work site in this case. He faults the armed officers for not firing a warning shot. Those six officers, who Plaintiff has yet to identify and serve, are not at issue on this motion. Only McDaniel and Pietsche (of the officers present at the scene of the attack) have asserted qualified immunity in the motion at issue. It is improper for a court to analyze a group of

officers' actions collectively in assessing qualified immunity. Each defendant's entitlement to immunity must be examined separately. Meadours v. Ermel, 483 F.3d 417, 421-22 (5th Cir. 2007). Rios and Longoria are certainly different, because there was no need for the unarmed officers in this case to leave to escape danger or seek reinforcements. Those cases do not, therefore, direct a decision in this case, but they do demonstrate that a reasonable officer need not be a perfect officer to be entitled to qualified immunity in connection with his handling of such an incident.

Plaintiff argues that McDaniel and Pietsche should have been more quick to give verbal orders to the attacking inmate to put down the hoe, and that the officers should have ordered the armed officers to fire a warning shot. The complaint must be construed in a light most favorable to Plaintiff on Rule 12(b)(6) review, and the court must draw all reasonable inferences in Plaintiff's favor, but the only reasonable inference with regard to the timing of the events was that the attack happened quickly, likely within less than five or ten seconds. If Plaintiff contends that the time frame was otherwise, he could have easily pleaded such facts, and it would be startling if he would not have alleged such highly unusual facts as an attack that took course over a longer period of time. In this setting, where officers were forced to react to an unanticipated attack, with due concern for the security of the other, scattering prisoners, and pursue a course of action within seconds, the court finds that Plaintiff has not alleged specific facts that portray Sgt. McDaniel or Sgt. Pietsche exhibiting deliberate indifference to Plaintiff's safety or otherwise violating clearly established

constitutional law that would apply in this setting. Both men are entitled to qualified immunity and dismissal of the claims against them.

**Karen Hoyle**

Plaintiff alleges that Karen Hoyle is a classification officer at DWCC. Hoyle is alleged to be responsible for screening the records of all offenders and properly classifying the offenders, as well as gauging the offenders' level of violence and aggressiveness. Those allegations must be accepted as true for current purposes. Plaintiff alleges that Hoyle failed to properly screen and classify Cody Charles, "whose records will prove has mental instabilities, and has a history of proven aggressive and violent behavior dating back to Charles' Angola days." Plaintiff adds that Charles' prison record will prove that he is a "violent and aggressive inmate who has a history of assault and batteries with weapons," and that Plaintiff would not have been attacked had Charles not been classified in a way that permitted Charles work in an area with tools that could be used as weapons.

Hoyle argues that classification is a matter that courts usually leave to the broad discretion of prison officials, who are accorded the widest possible deference to allow them to apply their specialized knowledge, policies, and practices to best maintain security and preserve order. See McCord v. Maggio, 910 F.2d 1248, 1250-51 (5th Cir. 1990). That caselaw has arisen most often in the context of inmates who demand that they be classified in a certain way. See McCord, supra and Wilkerson v. Maggio, 703 F.2d 909, 911 (5th Cir. 1983).

This is not a case, however, where an inmate is challenging his own classification. Rather, Plaintiff alleges that prison records showed Hoyle that inmate Charles Cody had a history of mental problems and violence, including attacks with weapons, yet Hoyle classified Cody in a way that allowed him access to dangerous weapons in the presence of other inmates. Those are allegations sufficient to depict deliberate indifference to Plaintiff's safety, so Hoyle should not be dismissed at this mere pleadings review stage. If she wishes to attempt to avoid trial, she should employ a motion for summary judgment that will allow greater presentation of the facts. On a related note, Hoyle argues in her reply that Plaintiff bases his allegations about Hoyle's knowledge on assumptions as to what is in the prison records. Those allegations must, however, be accepted as true in a Rule 12(b)(6) contest. If Hoyle wishes to challenge Plaintiff's ability to prove his allegations, she will have to employ a motion for summary judgment.

**Dr. Pamela Hearn**

Dr. Pamela Hearn is the DWCC physician. The Plaintiff alleges that Nurse Pam Austin contacted Dr. Hearn, who was in the administration building, approximately 30 minutes before Dr. Hearn arrived to examine Plaintiff. Dr. Hearn did not X-ray Plaintiff's head, but she did apply several stitches to stop the bleeding from the head wound. Dr. Hearn directed that Plaintiff be taken by prison van to the E. A. Conway Medical Center in Monroe, Louisiana. Plaintiff alleges that Dr. Hearn should have had him transported by ambulance to the LSU Medical Center in Shreveport, which Plaintiff asserts is better equipped for

trauma treatment. The E. A. Conway medical staff allegedly discovered that Plaintiff had an enlarged skull with a still-bleeding wound and a piece of skull fracture resting just above his brain. Plaintiff was rushed to the LSU Shreveport facility for surgery the next morning. Plaintiff alleges that if it were not for Dr. Hearn's actions, he "may not" have later suffered a seizure, had to take Dilantin, and had other health problems.

For a convicted prisoner or pretrial detainee to prevail on a claim that his medical care (or lack of care) violated the Constitution, he must prove that prison or jail officials were "deliberately indifferent" to his "serious medical needs." Estelle v. Gamble, 97 S.Ct. 285, 291 (1976); Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1996) (en banc). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. Estelle, 97 S.Ct. at 291-92. Disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a constitutional claim for indifference to medical needs. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

Plaintiff alleges that the registered nurse who first saw him contacted Dr. Hearn, who examined Plaintiff within about 30 minutes. Dr. Hearn chose to suture the wound and have Plaintiff transported to a nearby hospital. Most inmates who present claims before this court argue that prison medical staff should have sent them to a hospital more quickly rather than attempting to afford treatment with the smaller staff and less well-equipped prison medical facility. Plaintiff argues the converse, that Dr. Hearn should have taken the time at the prison

to take and develop X-rays before she stitched Plaintiff's wounds and sent him to the hospital. Plaintiff also disagrees with the mode of transportation that Dr. Hearn chose – van v. ambulance – and whether Hearn's choice of hospitals was the most appropriate for trauma care.

Plaintiff's allegations do not set forth facts that would constitute deliberate indifference by Dr. Hearn to Plaintiff's serious medical needs. Rather than demonstrate indifference, Dr. Hearn rendered reasonably prompt care, sutured the wound to stop the immediate bleeding, and quickly sent Plaintiff to a much better medical facility. That is far from indifference. Plaintiff may quibble with Dr. Hearn's decisions, made on the spot when presented with head trauma, but such disagreements do not give rise to a constitutional violation. Dr. Hearn is entitled to qualified immunity and the dismissal of all claims against her.

**Angie Huff**

Plaintiff alleged in his original complaint that Deputy Warden Angie Huff, whom Plaintiff alleges has supervisory capacity over the medical department and transportation, violated his constitutional rights when she did not provide him appropriate medical transportation to a serious trauma hospital. Monroe and Shreveport are within similar distances, east and west, of DWCC. The E. A. Conway hospital in Monroe and the LSU-HSC hospital in Shreveport are both part of the LSU hospital system. The allegation that Huff chose to transport Plaintiff to the E. A. Conway hospital by prison van, rather than

transport him to Shreveport by ambulance, simply does not rise to the level of depicting deliberate indifference to a serious medical need. It is also inconsistent with the allegation that Dr. Hearn is responsible for those decisions. All claims against Huff should be dismissed.

**Sgt. Ray**

Plaintiff alleges that Sgt. Ray and another officer drove him to the E. A. Conway Hospital. He complains that Ray and the other officer (who has not been served and did not join in this motion) stopped at a gas station but denied Plaintiff's request to use the restroom. Plaintiff adds that when they arrived at E. A. Conway, Sgt. Ray ordered Plaintiff to walk into the emergency room rather than place Plaintiff in a wheelchair.

The drive from DWCC (near Homer) and E. A. Conway in Monroe ordinarily takes less than 1.5 hours. Plaintiff's allegation that Sgt. Ray did not permit him to exit the prison van and use a service station restroom during a stop does not rise to the level of cruel and unusual punishment under the Eighth Amendment. The same is true of the allegation that Sgt. Ray made Plaintiff walk into the emergency room. Plaintiff does not allege that any harm was caused by the walk. He merely alleges that he told Ray that he felt weak and disoriented and desired a wheelchair, but Sgt. Ray said they had to be back at the prison by a certain time and did not have time to get a wheelchair. These allegations, once again, merely depict a difference of opinion between Plaintiff and a defendant as to how an event should have been handled. Every inmate disagreement with prison officials does not state

a claim for a constitutional violation. This one certainly does not, and Plaintiff has not even defended the claim against Ray in his memorandum. All claims against Sgt. Ray should be dismissed.

**Jerry Goodwin and Becky Moss**

Plaintiff alleges that medical staff at the hospital recommended a head plate to protect Plaintiff's brain after his surgery. Plaintiff alleges that the surgery left his brain "partially soft and exposed" due to the removal of boney material. He alleges that he is required to wear a medical safety hat/helmet to cushion any fall that he may have. He also alleges that the condition causes him to be denied housing in the general population, participation in vocational training involving tools, and eligibility for a work release program. Plaintiff alleges that he filed a grievance in the prison administrative remedy system and requested a head plate, as recommended by medical staff at LSU-HSC.

Plaintiff alleges that Becky Moss, as a designee of DWCC's warden, and Deputy Warden Jerry Goodwin, arbitrarily denied the grievance. Plaintiff's appeal was denied at the final step by the Secretary's designee, Linda Ramsey, who was named as a defendant but who has not been served and has not joined in this motion. Plaintiff alleges that the refusal to pay the cost of the plate violates La.R.S. 15:831(A), the Eighth Amendment, and the ADA.

Plaintiff has not alleged adequate facts regarding the potential benefits of the plate to plead an Eighth Amendment violation against Goodwin or Moss. Plaintiff alleges that he is provided a safety helmet designed to protect him from further injury. He implies that if he

had the plate he would be eligible for work release, job training, and general population housing, but the absence of those privileges does not amount to cruel and unusual punishment. It may be reasonable to assume that the exposed area is large enough to create significant risk of brain injury, which would be a serious medical need, but it is an assumption because there are few specific facts pleaded from which the nature of Plaintiff's medical condition may be discerned. Assuming there is a serious medical condition, there are not enough facts pleaded to permit characterization of Goodwin and Moss's denial of the grievance as deliberate indifference to that need when a medical safety hat had been provided. More specific facts would be necessary to elevate the simple situation presented by Plaintiff to the level of a constitutional violation, and Plaintiff has not presented those facts.

Plaintiff invokes La.R.S. 15:831(A), in which the Louisiana legislature directed the Secretary of Public Safety and Corrections to establish standards for medical services for each prison institution. The statute provides that an inmate may be taken to an outside medical facility when deemed necessary by the director. The statute also includes a prohibition of the expenditure of state funds for certain matters. The prohibition states:

> No monies appropriated to the department from the state general fund or from dedicated funds shall be used ... for the purposes of providing cosmetic medical treatment of inmates, unless the condition necessitating such treatment ... arises or results from an accident or situation which was the fault of the department or resulted from an action or lack of action on the part of the department.

It is not clear from the pleadings whether Goodwin or Moss relied upon this provision in denying the administrative grievance. In any event, Plaintiff alleged in an amended complaint (Doc. 22) that the statute is unconstitutional insofar as defendants rely upon it to refuse to pay his medical costs. There is nothing in the statute that mandates an expenditure for Plaintiff's head plate; Plaintiff merely argues that prison officials are not prohibited by the statute from paying for the medical treatment he requests. There is no reason for this court to second guess whether prison officials correctly applied the statute in this case. The question is whether the decision made by Moss and Goodwin, as alleged, states a constitutional violation. That issue was addressed above. Plaintiff makes no argument and cites no authority for the proposition that Section 831 in and of itself gives rise to a form of private cause of action against Goodwin or Moss. He also does not explain how the statutory prohibition is unconstitutional.

Plaintiff does argue that Goodwin and Moss's decision, and Section 831(A) to the extent they relief upon it, violates the ADA. Plaintiff clarifies in his memorandum that his ADA claims are against Deputy Warden Goodwin in his official capacity, which means that the claims are effectively claims against the Department of Public Safety and Corrections. Movants argue that the claims against Deputy Warden Goodwin are moot because Plaintiff has been transferred from DWCC to another prison. Defendants report that, at the time the suit was filed, Plaintiff had been transferred to the Elayn Hunt Correctional Center in St.

Gabriel and, later, Plaintiff was transferred to the LaFourche Parish Detention Center in Thibodaux, Louisiana.

The transfer of a prisoner from one facility to another ordinarily moots his claims for injunctive relief with respect to conditions at his former prison. In this case, however, Plaintiff is asserting an official capacity claim that is in reality a claim against the Department in connection with a medical condition that continues to exist. Goodwin is not alleged to have any personal responsibility or authority at the facility where Plaintiff is now housed, but the claims against Goodwin in his official capacity serves the purpose of providing notice to the Department, the real defendant of the claims, and the basis for the claims has not gone away. Plaintiff still wants the Department to pay for a metal plate so that Plaintiff will have the ability to participate in programs and activities in prison that are now prevented because of his medical condition. Plaintiff's ADA official capacity claims against Goodwin (and Moss) should not be dismissed at this time.

Defendants have not attacked Plaintiff's ADA claim on the merits, but they do generally assert an Eleventh Amendment defense to any claims for monetary damages against any defendant in his official capacity. It is not clear the precise claims that Plaintiff asserts under the ADA and the particular remedies he seeks. Applying the Eleventh Amendment to such issues is difficult enough when the issues are known, but it is especially difficult (and perhaps pointless) when the court has to guess what the issues are and then attempt to decide them. The court should not decide difficult constitutional issues under such circumstances,

and cases such as <u>Pitre v. David Wade Correctional Center</u>, 2008 WL 466160 (W.D. La. 2008) and authorities cited within it demonstrate how some of the more difficult ADA issues might be resolved. At this point, the court should simply decline to dismiss the ADA claims against Goodwin and Moss in their official capacities. As the issues sharpen through the amendment of pleadings, discussions between counsel, motion practice, or otherwise, the viability of particular claims or the availability of certain forms of relief may be susceptible to decision.

Accordingly,

**IT IS RECOMMENDED** that the Motion to Dismiss (Doc. 54) be **granted in part** by dismissing all claims against Mike McDaniel, Sgt. Pietsche, Sgt. Ray, Dr. Pamela Hearn, and Angie Huff.

**IT IS FURTHER RECOMMENDED** that the motion be **denied** in all other respects.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are

directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 23rd day of July, 2008.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE